IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COMITÉ DIALOGO AMBIENTAL, INC. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY *et al.*, <br><br> Defendants. | Civil Action No. 3:24-CV-01145-JAG <br><br> Oral Argument Requested |

**PLAINTIFFS' SUPPLEMENTAL BRIEF AND NOTICE OF RECENT AUTHORITIES**

**Introduction**

Plaintiffs file this Supplemental Brief at the Court's direction to explain why the Supreme Court's recent decision in *Seven County Infrastructure Coalition. v. Eagle County*, 145 S. Ct. 1497, 1513 (2025) ("*Eagle County*") has no bearing on the present case. Order of July 29, 2025. *Eagle County* instructs reviewing courts to "afford substantial deference" to an agency's reasonable explanation of how it decided to address impacts and alternatives in an Environmental Impact Statement ("EIS") prepared under the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4321, *et seq.*. 145 S. Ct. at 1511-12.

As a threshold matter, *Eagle County* does not apply in this case because the decision only addressed the appropriate standard of review for an EIS, and here the Federal Emergency Management Agency ("FEMA") refused to prepare any EIS for its massive project to reconstruct electricity infrastructure across Puerto Rico.

However, *Eagle County* would not impact the outcome of this case even were the Court to interpret the decision more broadly. Plaintiffs' central contention here is that, in its two

Programmatic Environmental Assessments ("Programmatic EAs"), FEMA *failed to reasonably explain the bases* for: (a) its refusal to consider renewable energy alternatives; (b) its cursory examination of relevant environmental impacts; or its (c) failure to prepare either an EIS or, at minimum, supplemental NEPA analysis. *See* Plaintiffs' Summary Judgment Memorandum ("Pl. Summ. Jud. Mem.") (ECF No. 46-2) at 9-30. Accordingly, as discussed below, and as confirmed by several decisions issued since *Eagle County*, even if the "substantial deference" principle applied to more than just review of an EIS, the Supreme Court's recent decision has no application, because the Court has no reasonable explanation as to which substantial deference could be due to FEMA here.

In addition, several other recent rulings further support Plaintiffs' motion for summary judgment. Thus, given the months since Plaintiffs filed their Opposition to Defendants' Summary Judgment Motion ("Pl. Opp. Mem.") (ECF. No. 63), as also discussed below, Plaintiffs hereby bring several new authorities to the Court's attention that bear on pending issues. *See Diamond Alt. Energy v. EPA*, 145 S. Ct. 2121 (2025); *WildEarth Guardians v. U.S. Forest Serv.*, 137 F.4th 1068 (10th Cir. 2025); *Comm. to Save the Derry Rail Trail Tunnel v. Bhatt*, No. 24-cv-00262, 2025 U.S. Dist. LEXIS 123369, at *24-30 (D.N.H. June 30, 2025).

## Discussion

### A. The Supreme Court's Ruling In *Eagle County*

*Eagle County* concerned a challenge to the U.S. Surface Transportation Board's ("STB") 3,600 page EIS the agency prepared for an 88-mile railroad line. 145 S. Ct. at 1508. In response to concerns about the need to address upstream environmental impacts of oil and gas development that the new rail line would facilitate, and downstream impacts of refineries that would receive those new fossil fuels for processing, the STB detailed in an exhaustive EIS that it

had neither had a role in, nor control over, these ancillary activities, and on that basis explained that the EIS would not analyze them in any detail. *Id.* at 1509. Nonetheless, the D.C. Circuit found the agency had violated NEPA by refusing to analyze these secondary impacts. *Id.*

The Supreme Court reversed. Reiterating the long-standing administrative law principle that an agency decision must be "reasonable and reasonably explained," the Court found that in the context of a full blown EIS, an agency should be afforded substantial deference so long as it meets this basic standard. *Id.* at 1511-12; *id.* at 1514 (requiring agency simply make a "fully informed and well-considered decision")(citations omitted).

Applying those principles to the STB's EIS, the Supreme Court found the D.C. Circuit had erred because the agency had adequately explained why it would not further analyze upstream and downstream effects, and the Court should not have second-guessed the agency's reasonable explanation. *Id.* at 1515-17. Similarly, the Court explained that in "defining the project" at issue, the Court should defer to the agency when it draws a "reasonable and manageable line." *Id.* at 1517. Thus, in short, *Eagle County* stands for the proposition that an agency's reasonable explanation of its decision-making in preparing an EIS is due substantial deference.

B. **Because FEMA Failed To Reasonably Explain The Bases For Its Decisions Here, *Eagle County's* Substantial Deference Principle Does Not Apply, Regardless of How Broadly The Supreme Court's Ruling Is Applied**

Plaintiffs in this case challenge two FEMA Programmatic EAs and Findings of No Significant Impact ("FONSIs") for energy-related reconstruction projects across Puerto Rico. Pl. Summ. Jud. Mem. at 7-9. Since *Eagle County* concerned the appropriate standard of review for an agency's full-blown EIS, the decision has no bearing on the Court's analysis in this case.

However, even were the Court to read *Eagle County's* substantial deference standard to apply more broadly to all NEPA cases, it would not change the outcome here. As detailed in their summary judgment memorandum (ECF No. 46-2)—and further discussed in their opposition brief, Pl. Opp. Mem. (ECF. No. 63)—Plaintiffs contend that FEMA violated NEPA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because the agency:

- Failed to "offer any meaningful explanation" for its refusal to consider renewable energy alternatives in its work to provide "safe and efficient delivery of energy" to communities across Puerto Rico, Pl. Summ. Jud. Mem. at 12-17, in light of the many studies demonstrating the feasibility and benefits of this approach. *Id.* at 9-11; Pl. Opp. Mem. at 8-17.

- Failed to reasonably explain why proposed mitigation measures would protect air, water, and other resources such as protected species from any meaningful adverse impacts, Pl. Summ. Jud. Mem. at 21-24, in light of the Programmatic EAs' acknowledgment of the serious impacts associated with rebuilding the fossil-fuel based grid. *Id.* at 17-21; Pl. Opp. Mem. at 17-24 (FEMA "offered no rational basis for its conclusions that impacts on a number of important environmental resources will not be significant").

- Failed to "meaningfully respond to Plaintiffs' arguments" as to why EISs are required for these projects, Pl. Summ. Jud. Mem. at 25-27, or at minimum, that the energy-related issues in the two Programmatic EAs should be addressed in a single EIS. *Id.* at 24-25; Pl. Opp. Mem. at 24-28.

- Failed to reasonably explain why the agency would not even conduct any further NEPA review in light of significant new information that called into serious question the

agency's conclusions in its earlier FONSIs. Pl. Summ. Jud. Mem. at 27-30; Pl. Opp. Mem. at 28-29.

As to each of these issues, this case turns on the agency's *failure to reasonably explain the bases for its decisions*. Accordingly, the "substantial deference" principle in *Eagle County* has no application here regardless of how broadly the Court reads the Supreme Court's ruling. As noted, in *Eagle County*, the agency detailed—in the 3,600 page EIS itself—the basis for its refusal to conduct the additional environmental analysis that the D.C. Circuit had erroneously determined NEPA requires. 145 S. Ct. at 1509. It was in that context that substantial deference was due.

Where, as here, by contrast, there is no reasonable explanation to defer to, nothing in the *Eagle County* decision suggests a reviewing Court should free an agency from its basic administrative law requirement that its decisions be "reasonably explained." *Id*. at 1511; *see also* Pl. Summ. Jud. Mem. at 16-17 (discussing *Ohio v. EPA*, 144 S. Ct. 2040 (2024), where the Supreme Court found the agency similarly failed to reasonably respond to comments).

In short, *Eagle County* has no bearing on the correct outcome in this case, because, in determining whether an agency has satisfied its baseline obligation to act reasonably, a reviewing court cannot "defer to a void." *Helena Hunters & Anglers Ass'n v. Marten*, 470 F. Supp. 3d 1151, 1166 (D. Mont. 2020); *Wilderness Soc'y v. United States DOI*, No. 22-cv-1871, 2024 U.S. Dist. LEXIS 51011, at *91 (D.D.C. Mar. 22, 2024) ("The Court, after all, 'cannot defer to a void.'").

C. **Several New Decisions Issued Since *Eagle County* Further Confirm This Result**

Several recent decisions issued since *Eagle County* further confirm that the Supreme Court's substantial deference principle does not apply here:

5

1. In *Center for Biological Diversity v. Bureau of Land Management* ("*BLM*"), the Ninth Circuit recently took *Eagle County* into account in rejecting BLM's alternatives analysis under NEPA. 141 F.4th 976, 994-1001 (9th Cir. 2025). Although the Court emphasized the deference due to BLM, the Court found the agency had nonetheless violated NEPA and the APA by failing to reasonably explain the basis for the alternatives considered—and chosen—in light of the project's purpose. *Id.* at 1000-01.

Similarly, here, FEMA's failure to reasonably explain its restrictive alternatives analysis violates NEPA and the APA. Pl. Summ. Jud. Mem. at 14-17; Pl. Opp. Mem. at 8-17; *accord Xerces Soc'y for Invertebrate Conservation v. Watson*, No. 22-cv-00790, 2025 U.S. Dist. LEXIS 119639, at *3 n.2 (D. Or. June 23, 2025) (taking *Eagle County* into account in issuing remedies for agency's failure to adequately explain refusal to consider certain alternatives in programmatic NEPA reviews).[1]

2. Similarly, in *Defenders of Wildlife v. U.S. Fish and Wildlife Serv.*, the Court recently applied *Eagle County* in finding that an agency had not reasonably explained its refusal to either consider "a range of reasonable alternatives" or prepare an EIS in light of the projects'

---

[1] The *BLM* ruling also reinforces why the Court must reject Defendants' challenge to Plaintiffs' Article III standing. 141 F.4th 976. As the Court explained, as long as Plaintiffs demonstrate an injury, they may raise *all* of their environmental concerns, and the injury is redressable as long as the agency "*could be influenced*" by additional analysis. *Id.* (emphasis in original). Here, therefore, Plaintiff members' reasonable concerns about specific FEMA implementation projects afford standing for all of their claims. Pl. Opp. Mem. at 3-8.

Contrary to Defendants' waiver argument, Plaintiffs' discussion of these specific projects in opposing Defendants' motion for summary judgment is entirely appropriate. *WorldNet Telecomms., Inc. v. Telecomms. Regul. Bd. of P.R.*, 707 F. Supp. 2d 163, 180 (D.P.R. 2009) (waiver principles do not apply to arguments presented in opposition to a motion for summary judgment). On the other hand, Defendants' purported "Reply Statement of Material Facts" (ECF No. 64-1) at 4-8, must be disregarded, as the introduction of additional material facts—which Plaintiffs had no opportunity to respond to—is not authorized by Local Rule 56(d).

impacts. No. 24-cv-73, 2025 U.S. Dist. LEXIS 140192, at *15-20 (E.D.N.C. July 23, 2025); *id.* at 20 (reiterating that *Eagle County* does not relieve agencies of their fundamental NEPA obligation to undertake a "hard and careful look" at impacts and alternatives). Those principles fully apply in this case as well.

In sum, because the substantial deference principle in *Eagle County* does not apply in this case, the Supreme Court's recent decision does not change the outcome. Alternatively, even if the Court were to afford FEMA substantial deference, FEMA's decisions here cannot be sustained for all the reasons detailed in Plaintiffs' briefing.

**D.      Several Other Recent Rulings Also Further Support Plaintiffs' Arguments**

Plaintiffs also hereby bring to the Court's attention several additional rulings that further support Plaintiffs' arguments. *Ocasio-Ruiz v. United States*, No. 20-2000, 2023 U.S. App. LEXIS 35917 (1st Cir. July 10, 2023) (taking supplemental authorities into account): (1) *Diamond Alt. Energy v. EPA*, 145 S. Ct. 2121 (2025); (2) *WildEarth Guardians v. U.S. Forest Serv.*, 137 F.4th 1068 (10th Cir. 2025); and (3) *Comm. to Save the Derry Rail Trail Tunnel v. Bhatt*, No. 24-cv-00262, 2025 U.S. Dist. LEXIS 123369, at *24-30 (D.N.H. June 30, 2025).

1.      *Diamond Alternative Energy v. EPA* concerned a challenge by fossil fuel producers to the Environmental Protection Agency's ("EPA") decision allowing California to impose new vehicle emission standards. 145 S. Ct. at 2129. To demonstrate Article III standing, the fuel producers claimed that the California regulations would lead automobile manufacturers to produce more electric vehicles that do not use fossil fuels, reducing their sales. *Id.*.

The D.C. Circuit found that the fuel producers had failed to show redressability, and therefore Article III standing, because there was not a sufficient likelihood that third parties not before the Court—*i.e.*, the automobile manufacturers—would make fewer electric cars without

the California regulations in place. *Id.* at 2132. However, the Supreme Court recently reversed, finding that the Court of Appeals had raised the redressability bar too high. *Id.* at 2134-41.

As the Court explained, because it was reasonable to predict that altering the California regulations would have at least *some* influence on the automobile manufacturers, the fuel producers demonstrated their injuries were at least partially redressable, which is all that is required. *Id.* at 2135 (explaining how even "one dollar" in additional revenue would be sufficient).

Similarly, in this case, FEMA's argument that Plaintiffs only have Article III standing if they can show precisely how new Programmatic EAs will lead third parties to apply for renewable energy projects raises the redressability bar far too high. Particularly in a NEPA case, where the redressability requirement is "relaxed," *BLM*, 141 F.4th at 1008, Plaintiffs have more than met their burden. *See also Gutierrez v. Saenz*, 145 S. Ct. 2258, 2268-69 (2025) (finding redressability despite additional barriers to ultimate relief sought by petitioner). Moreover, Defendants' argument in any event ignores FEMA's *own* projects repairing fossil fuel infrastructure—under the NEPA coverage of the Programmatic EAs—that injure Plaintiffs. Pl. Opp. Mem. at 4-5.

2. In *WildEarth Guardians v. U.S. Forest Serv.,* the Tenth Circuit recently concluded that the U.S. Forest Service violated NEPA in connection with its EA on Rocky Mountain bighorn sheep management. 137 F.4th 1068. Among other concerns, the Court found the agency had not adequately explained how certain project design mitigation criteria would protect the species. *Id.* at 1089-90. Explaining the need for "science or data suggesting" the proposed mitigation would work, the Court found the agency's analysis "failed to take a hard look" at the issue. *Id.*

Similarly, here, one of Plaintiffs' central concerns is that FEMA never explained how the purported mitigation measures on which it relied would protect resources threatened by the many projects to be undertaken under the NEPA coverage of the two Programmatic EAs at issue, without any additional NEPA review. Pl. Summ. Jud. Mem. at 21-24; Pl. Opp. Mem. at 20-24. Under *Wild Earth Guardians*, this failure violates NEPA.

3. Finally, in *Comm. to Save the Derry Rail Trail Tunnel v. Bhatt*, the district court in New Hampshire recently rejected the Federal Highway Administration's failure to reasonably explain its alternatives analysis under NEPA. 2025 U.S. Dist. LEXIS 123369 at *24-30. While the agency "remind[ed] the Court of the deference a reviewing court must give to agency decision-making," the court explained that "when an agency fails to conduct analysis that the law requires, the court cannot give deference to a decision that was never made." *Id.* at *31.

Similarly, here, since the agency never meaningfully explained the bases for its decisions under review, substantial deference under *Eagle County* does not apply, and the agency's decision should be set aside.

**Conclusion**

For all the foregoing reasons, as well as those set forth in Plaintiffs' summary judgment memoranda, Plaintiffs respectfully urge the Court to grant Plaintiffs' motion for summary judgment.

Dated: August 13, 2025                                Respectfully submitted,

*/s/ Howard M. Crystal*
Howard M. Crystal (*Pro hac vice*)
(D.C. Bar No. 446189)
Email: hcrystal@biologicaldiversity.org
Tel: (202) 809-6926
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, D.C. 20005
Tel: (202) 809-6926

*/s/ William Santiago-Sastre*
William Santiago-Sastre, Esq.
USDC PR 201106, P.O. Box 1801
Sabana Seca, Puerto Rico 00952-1801
Email: wsantiagosastre@gmail.com
Tel: (787) 448-7032; 622-3939

*Attorneys for Plaintiffs*

## Certificate of Service

I hereby certify that on August 13, 2025, I filed the foregoing Supplemental Briefs via CM/ECF, which will send notification of such filing to Defendants' counsel.

*/s/ Howard M. Crystal*
Howard M. Crystal

*Attorney for Plaintiffs*