Adam R.F. Gustafson
Acting Assistant Attorney General
Environment & Natural Resources Division

Katharine Laubach (CO 42693)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street – North Terrace, Ste. 600
Denver, Colorado 80202
Phone: (202) 353-5765
E-mail: katharine.laubach@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| COMITÉ DIALOGO AMBIENTAL, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY, et al.,<br><br>　　　　Defendants. | No. 3:24-CV-1145-JAG<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF** |

In response to the Court's order dated July 19, 2025, Defendants submit this supplemental brief regarding the impact of *Seven County Infrastructure Coalition, et al. v. Eagle County*, 145 S. Ct. 1497 (2025), on this case.

**I.　　INTRODUCTION**

In the aftermath of Hurricanes Irma and Maria, the Federal Emergency Management Agency (FEMA), a component of the U.S. Department of Homeland Security, prepared Programmatic Environmental Assessments (PEAs) under the National Environmental Policy Act (NEPA),

42 U.S.C. § 4321 *et seq*., to assess the environmental impacts of funding projects to restore damaged utilities, transportation systems, and public facilities in Puerto Rico. Plaintiffs challenge two of the PEAs and associated Findings of No Significant Impact (FONSIs) under the Administrative Procedure Act (APA), 5 U.S.C. § 706, and ask the Court to vacate the PEAs and FONSIs, order FEMA to undertake new analysis under NEPA, and enjoin FEMA from further funding any projects that do not rely solely on rooftop solar energy generation.

Defendants, in cross moving for summary judgment and opposing Plaintiffs' motion for summary judgment, argue that Plaintiffs lack standing under Article III of the Constitution, because they cannot satisfy the "traceability" and "redressability" elements of associational standing. *See* ECF No. 62-1 at 14-19. Defendants also argue that even if Plaintiffs have standing, their claims fail on the merits because FEMA complied with NEPA in preparing and issuing the PEAs, including considering those alternatives that meet the purpose and need of the PEAs, analyzing the potential environmental impacts of the projects in question, addressing mitigation measures and best management practices in the PEAs, responding to public comments about renewable energy alternatives, and concluding that an Environmental Impact Statement (EIS) was not warranted. *See* ECF No. 62-1 at 19-38.

*Seven County*, which marks a sharp "course correction" for judicial review under NEPA, emphasizes that the "bedrock principle" governing judicial review in NEPA cases is "deference." *Seven County,* 145 S. Ct., at 1514-15. And *Seven County* broadly supports Defendants' arguments that Plaintiffs' claims fail on the merits and that Plaintiffs are not entitled to vacatur.

## II.     SUPPLEMENTAL ARGUMENT

A.     *Seven County* Mandates "Substantial Judicial Deference" in all NEPA Cases and Supports the Analysis Conducted by FEMA.

In *Seven County*, the U.S. Surface Transportation Board (STB) approved a proposal to build and operate an 88-mile railway in Utah connecting oil production facilities in the Uinta Basin to the national rail network, and thereby to refineries in Louisiana, Texas, and elsewhere. *Id.* at 1507. The STB considered the environmental effects of the proposed railway in an EIS, but the D.C. Circuit vacated the Board's EIS and approval of the project, faulting the STB for not sufficiently considering the railway's upstream effects of incentivizing increased oil drilling in the Uinta Basin and the downstream effects of increased oil refining along the Gulf Coast. *Id.* at 1507-08.

The Supreme Court reversed, emphasized that the "central principle of judicial review in NEPA cases is deference." *Id.* at 1511; *see also id.* n.2 ("When reviewing compliance with NEPA, 'courts are to play only a limited role'") (quoting *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 557-58 (1978)). The Court observed that "[s]ome courts have strayed and not applied NEPA with the level of deference demanded by the statutory text and [the Supreme] Court's cases[,]" and it concluded that a "course correction . . . is appropriate to bring judicial review under NEPA back in line with the statutory text and common sense." *Id.* at 1513-14.

*Seven County* reasoned that a federal agency, when evaluating environmental effects and feasible alternatives for purposes of NEPA, "will invariably make a series of fact-dependent, context-specific, and policy-laden choices about the depth and breadth of its inquiry." *Id.* at 1513. These choices must be upheld if "they fall within a broad zone of reasonableness." *Id.* The D.C. Circuit thus erred when it concluded that the STB failed to take a "hard look" by not analyzing the

projects' effects "more extensively." *Id.* at 1509. The D.C. Circuit simply "did not afford the [agency] the substantial judicial deference required in NEPA cases." *Id.* at 1510; *see also id.* at 1513 (noting that "[o]n th[e]se kinds of questions . . . agencies possess discretion and must have broad latitude to draw a manageable line" (citation and internal quotation marks omitted)). *Seven County* also faulted the D.C. Circuit for requiring the federal agency "to address environmental effects from projects that are separate in time or place from the [] project at hand" and "to speculate about the effects of a separate project that is outside its regulatory jurisdiction." *Id.* at 1515-16. And *Seventy County* emphasized that "NEPA is purely procedural" and "imposes no *substantive* constraints on the agency's ultimate decision to build, fund, or approve a proposed project." *Id.* at 1510-11.

Plaintiffs challenge two PEAs prepared by FEMA under NEPA: the Utility Repair, Replacement, and Realignment PEA (Utilities PEA) and the Public Facilities Infrastructure Recovery and Resiliency PEA (Public Facilities PEA). FEMA issued the Utilities PEA for projects to "restore damaged utilities in Puerto Rico and increase their resiliency for future weather events." AR_2894. FEMA issued the Public Facilities PEA to support funding for potential projects that will restore Puerto Rican public facilities and increase their resiliency. AR_11871. These two PEAs comprise the type of "fact-dependent, context-specific" choices by FEMA that fall within NEPA's "broad zone of reasonableness." 145 S. Ct. at 1513.

First, contrary to Plaintiffs' arguments, and consistent with *Seven County*, FEMA appropriately considered alternatives under NEPA. *See* 42 U.S.C. § 4332(2)(E) (2012) (NEPA requires federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action"). As explained in Defendant's summary judgment brief, FEMA reasonably considered alternatives and selected those that meet the agency's identified purpose and need, account for the

4

preferences and capabilities of funding recipients, and are routine in disaster recovery operations. *See* ECF No. 62-1 at 12-16 (addressing the four alternatives of the Utilities PEA and the four alternatives of the Public Facilities PEA). The record also makes clear that while the agency determined that Plaintiffs' proposed alternative of only funding distributed renewable energy projects was not reasonable, neither the Utilities PEA nor the Public Facilities PEA forecloses the funding of renewable energy projects. *See* AR_3150; ECF No. 62-1 at 14. And applying *Seven County*'s rationale here, FEMA's alternatives analysis should be upheld. There, the Court emphasized that "when reviewing an agency's EIS, 'the only role for a court' is to confirm that the agency has addressed environmental consequences and feasible alternatives as to the relevant project." 145 S. Ct. at 1511. Here, the record is clear that FEMA determined Plaintiffs' preferred alternative was not a feasible means of meeting the agency's need to restore power quickly. ECF No. 62-1 at 14-15. This identification and assessment of alternatives is precisely the sort of "fact-dependent, context-specific, and policy-laden" choice that requires judicial deference. 145 S. Ct. at 1513.

Second, *Seven County* supports FEMA's analysis of potential environmental impacts in the PEAs. As explained in Defendants' summary judgment brief, FEMA carefully considered and disclosed the potential environmental impacts to a host of resources, including soil, wildlife, vegetation, air quality, and water quality. ECF No. 62-1 at 17-20 (citing AR_1754; AR_11848; AR_2906-16; AR_2958-63). *Seven County* emphasized that courts "must defer to the agency's reasonable choices regarding the scope and contents" of the NEPA analysis. 145 S. Ct. at 1514). "NEPA does not require the agency to weigh environmental consequences in any particular way. "Rather, an agency may weigh environmental consequences as the agency reasonably sees fit under its governing statute and any relevant substantive environmental laws." *Id.* at 1507; *see also id.* at 1513 (a reviewing court may not "substitute its judgment for that of the agency as to the environmental

consequences of its actions"). Plaintiffs' critiques of FEMA's environmental effects analyses flout *Seven County*'s direction that courts "defer to agencies' discretionary decisions about where to draw the line when considering indirect environmental effects and whether to analyze effects from other projects separate in time or place." *Id*. at 1504. Indeed, the Court cautioned that the exercise of that discretion in determining "what qualifies as significant or feasible or the like" requires a reviewing court to be "at its most deferential." *Id.* at 1513.

Third, *Seven County* makes clear that "agencies are not required to analyze the effects of projects over which they do not exercise regulatory authority." *Id*. at 1516. There, the Supreme Court considered that while the STB's decision to authorize the construction of a railroad could increase oil drilling or crude oil refining, future projects would be subject to state and local approval processes, and that "the environmental effects of future oil and gas development in the Basin are 'speculative' and attenuated from the project at hand." *Id.* at 1509 (citing *Dep't of Transp. v. Pub. Citizen,* 541 U. S. 752, (2004)). Here, Plaintiffs insist that FEMA must consider only solar energy generation, confusing FEMA's role in simply evaluating applicant project proposals with affirmatively propounding policy choices. As explained in Defendants' summary judgment brief, "[s]ubrecipients develop and propose projects to FEMA for evaluation rather than FEMA developing projects on its own." ECF No. 62-1 at 22 (quoting AR_3158) (internal quotation marks omitted). The record also makes clear that FEMA has not received proposals for power generation or renewable energy and that other agencies "might be funding renewable energy projects in Puerto Rico." AR_29687. Accordingly, the PEAs explicitly do not cover the construction of "new utility scale generation." AR_2894, AR_11871. Just as "the Board would have no role in approving or regulating the production, refining, or use of Uinta Basin crude oil," 145 S. Ct. at 1509 (internal quotation marks omitted), FEMA has no role in approving or regulating the production, refining,

or use of energy generation in Puerto Rico. As such, the Court should defer to FEMA's scope of its NEPA analysis.

**B.      Plaintiffs' Requested Remedies are Improper Under *Seven County*.**

While *Seven County* involved judicial review of an agency's NEPA analysis, it also identified principles that apply to the remedies issued for NEPA violations. Plaintiffs' request for vacatur of the PEAs and related FONSIs is fundamentally at odds with Supreme Court precedent that has consistently affirmed the courts' limited role in NEPA cases, as well as the deference owed to agencies in making choices "within a broad zone of reasonableness." *Id.* at 1513. NEPA does not allow a court to "interject itself within the area of discretion . . . as to the choice of the action to be taken" by an agency. *Id.* at 1514 (quoting *Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227-28 (1980)). This is true both when a court analyzes an agency's NEPA analysis and when a court crafts an appropriate remedy after finding a NEPA violation. In *Seven County*, the Supreme Court expressly ruled out vacatur as a one-size-fits-all remedy for NEPA deficiencies, noting that "[e]ven if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS." *Id.* at 1514; *see also id.* at 1513 (noting courts have transformed NEPA from a "modest procedural requirement into a blunt and haphazard tool"). Thus, should the Court find any violation of NEPA, it should reject Plaintiffs' demand for vacatur and, at most, remand to the agency to conduct further NEPA analysis.

### III.      CONCLUSION

*Seven County* reinforces Defendants' arguments in their cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, in that FEMA made "reasonable choices regarding the scope and contents" of the PEAs, and "reasonably explained" those choices.

7

145 S. Ct. at 1514. And because FEMA "drew a reasonable and manageable line" as to the "depth and breadth of its inquiry," *id.* at 1513, 1517, this Court must defer to its "judgment as to the environmental consequences of its actions." *Id.* at 1513 (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976)). Even if this Court finds a NEPA violation, it should reject Plaintiffs' request for vacatur in light of *Seven County*'s instruction that such relief is improper "absent reason to believe that the agency might disapprove the project if it added more to the EIS." *Id.* at 1514. At most, the Court should remand to the agency to conduct further NEPA analysis.

Respectfully submitted on August 13, 2025,

Adam R.F. Gustafson
Acting Assistant Attorney General
Environment & Natural Resources Division

_____
Katharine Laubach
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street – North Terrace, Ste. 600
Denver, Colorado 80202
(202) 353-5765
katharine.laubach@usdoj.gov
*Counsel for the United States*